IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEFFREY MACDONALD, TAMMY MACDONALD,<br>　　　　　　　Plaintiffs,<br>　　vs.<br>SERVIS ONE, INC. d.b.a. BSI FINANCIAL SERVICES; STATEBRIDGE COMPANY, LLC; TRANS UNION LLC,<br>　　　　　　　Defendants. | CASE NO. 1:21-cv-6070<br><br>Hon.<br><br>Magistrate Judge:<br>Hon. |

## COMPLAINT

Plaintiffs Jeffrey MacDonald (Mr. MacDonald) and Tammy MacDonald (Mrs. MacDonald)(collectively Plaintiffs) bring the following Complaint against Servis One, Inc. d.b.a. BSI Financial Services (BSI), Statebridge Company, LLC (Statebridge), and Trans Union LLC (Trans Union) for violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, arising out of the obsolete, false, and misleading reporting of Plaintiffs' discharged mortgage loan.

## PARTIES

1.　　Plaintiffs are consumers as that term is defined in 15 U.S.C. § 1681a.

2.　　Plaintiffs are the owners of the real property located at 5950 North Kenmore Avenue, Apartment 101, Chicago, Illinois, 60660 (Kenmore Property).

3.　　Trans Union is a limited liability company organized under the laws of Delaware and has a principal place of business at 555 West Adams Street, Chicago, Illinois 60661.

4.　　Trans Union is a consumer reporting agency as that term is defined in 15 U.S.C. § 1681a that compiles and maintains files on consumers on a nationwide basis. Trans Union is regularly engaged in the practice of assembling and evaluating consumer credit information for the purpose of furnishing to third parties reports of consumers' credit histories, commonly referred to as credit reports, and defined as consumer reports under 15 U.S.C. § 1681a.

5. BSI is a corporation organized under the laws of Delaware with its principal place of business at 1425 Greenway Drive, Suite 400, Irvine, Texas 75038. In the State of Illinois, BSI Financial Services is a fictitious name for Servis One, Inc.

6. BSI regularly conducts business in this District.

7. BSI is a mortgage servicing company that services residential mortgage loans and is a furnisher of information as defined by 15 U.S.C. § 1681s-2.

8. Statebridge is a corporation organized under the laws of Colorado with its principal place of business at 6061 South Willow Drive, Suite 300, Greenwood Village, CO 80111.

9. Statebridge regularly conducts business in this District.

10. Statebridge is a mortgage servicing company that services residential mortgage loans and is a furnisher of information as defined by 15 U.S.C. § 1681s-2.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

12. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District and the Kenmore Property is within this District.

## FACTS

**I. Plaintiffs' Mortgage Loan on the Kenmore Property & Bankruptcy**

13. Plaintiffs executed a mortgage and promissory note in the amount of $75,000, on August 7, 2002, encumbering and secured by the Kenmore Property (Kenmore Mortgage).

14. On October 14, 2005, Plaintiffs filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Indiana styled *In re: Tammy MacDonald*, N.D. Ind. Bankr. No. 05-68053-jpk.

15. The Kenmore Mortgage was listed among the debts on Schedule F of Plaintiffs' bankruptcy petition and all subsequently filed Schedules.

16. On August 1, 2006, Plaintiffs were granted a discharge.

17. Plaintiffs did not reaffirm the Kenmore Mortgage debt.

18. That discharge eliminated Plaintiffs' personal liability for the Kenmore Mortgage, but it remained a lien against the Kenmore Property and Plaintiffs continued to pay it. As of the date of this filing, Plaintiffs are current on payments under the Kenmore Mortgage.

19. After Plaintiffs' discharge, each servicer of the Kenmore Mortgage, including BSI and BSI's direct predecessor in interest, Statebridge, had actual knowledge of Plaintiffs' bankruptcy discharge.

20. After Plaintiffs' discharge, each servicer of the Kenmore Mortgage, including BSI and BSI's direct predecessor in interest, Statebridge, took actions indicating they were aware and believed that the Kenmore Mortgage had been discharged in bankruptcy.

I. **Statebridge's Inaccurate Furnishing & Mr. MacDonald's Disputes**

21. Statebridge serviced the Kenmore Mortgage between July 2014 and August 2016.

22. Statebridge furnished and continues to furnish inaccurate information regarding Mr. MacDonald to Trans union regarding the Kenmore Mortgage.

23. For example Mr. MacDonald's Trans Union reports listed the Kenmore Mortgage account under "Adverse Accounts" with the following information:

> **STATEBRIDGE COMPANY** #178** ( 6061 SOUTH WILLOW DR, SUITE 300, GREENWOOD VILLAGE, CO 80111, (866) 466-3360 )
> We investigated the information you disputed and this previously deleted item has now been verified and **ADDED** back to your credit report. Here is how this information appears on your credit report following our investigation.
>
> | | | | |
> |---|---|---|---|
> | Date Opened: 08/13/2002 | Balance: $0 | Pay Status: | Current; Paid or Paying as Agreed |
> | Responsibility: Joint Account | Date Updated: 10/25/2016 | Terms: | $0 per month, paid Monthly for 84 months |
> | Account Type: Mortgage Account | Payment Received: 10/07/2016 ($0) | | |
> | Loan Type: CONVENTIONAL REAL ESTATE MTG | Last Payment Made: 10/07/2016 | | |
> | | High Balance: $75,000 | Date Closed: | 10/25/2016 |
>
> Remarks: TRANSFERRED TO ANOTHER OFFICE
>
> | | 09/2016 | 08/2016 | 07/2016 | 06/2016 | 05/2016 | 04/2016 | 03/2016 | 02/2016 | 01/2016 | 12/2015 | 11/2015 | 10/2015 |
> |---|---|---|---|---|---|---|---|---|---|---|---|---|
> | Rating | X | X | X | X | X | X | X | X | X | X | X | X |
> | | 09/2015 | 08/2015 | 07/2015 | 06/2015 | 05/2015 | 04/2015 | 03/2015 | 02/2015 | 01/2015 | 12/2014 | 11/2014 | 10/2014 |
> | Rating | X | X | X | X | X | X | X | X | X | X | X | X |
> | | 09/2014 | 08/2014 | 07/2014 | | | | | | | | | |
> | Rating | X | X | X | | | | | | | | | |

24. This account information should not have been furnished by BSI or reported by Trans Union for the following reasons:

> a) The information is false and misleading because Plaintiffs do not have any personal liability for the Kenmore Mortgage thus it should not have been reported at all.
>
> b) The information is false and misleading because it does not include a statement that the account was included or discharged in bankruptcy.
>
> c) The information is obsolete because the account was discharged in a bankruptcy, and is being reported more than seven years after Plaintiffs filed their bankruptcy petition and the debt was discharged.

25. Mr. MacDonald sent a dispute directly to Trans Union in early 2021 to notify it that the Kenmore Mortgage account was discharged in bankruptcy, provided the bankruptcy case number, and requested that the Statebridge account be deleted because it was inaccurate and obsolete.

26. On information and belief, Trans Union notified Statebridge of Plaintiffs' disputes.

27. On information and belief, Trans Union notified Statebridge of Mr. MacDonald's disputes.

28. After receiving said notice, Statebridge failed to conduct a reasonable investigation.

29. Trans Union failed to conduct a reasonable investigation of Mr. MacDonald's dispute.

30. On June 22, 2021, Trans Union notified Mr. MacDonald that it was reinserting the adverse Statebridge information into his file:

> **Your Investigation Results**
>
> INVESTIGATION RESULTS - REINSERTED: This previously deleted item(s) has been verified; therefore, it has been added back to your credit report.

31. Statebridge verified the information it furnished regarding the Kenmore Mortgage was complete and accurate under 1681i(a)(5)(B)(i).

32. As of the date of the filing of this Complaint, Statebridge is still furnishing and Trans Union is still reporting this false, inaccurate, and obsolete information.

**II. BSI's Inaccurate Reporting & Mrs. MacDonald's Disputes**

33. The servicing of the Kenmore Mortgage was transferred from Statebridge Company, LLC to BSI in August 2016.

34. BSI serviced the Kenmore Mortgage between August 2016 and May 2018.

35. BSI furnished and continues to furnish information regarding Mrs. MacDonald to Trans Union regarding the Kenmore Mortgage. For example, in March, 2020, Mrs. MacDonald's Trans Union report listed the Kenmore Mortgage account under "Adverse Accounts" with the following information:



36. This account information should not have been furnished by BSI or reported by Trans Union for the following reasons:

    a) The information is false and misleading because Plaintiffs do not have any personal liability for the Kenmore Mortgage thus it should not have been reported at all.

    b) The information is false and misleading because it does not include a statement that the account was included or discharged in bankruptcy.

    c) The information is false and misleading because the last payment on the account was not April 9, 2018, the account is not 60 days past due, the maximum delinquency was not $1,237, and the account was not closed in May 2018.

    d) The information is obsolete because the account was discharged in a bankruptcy, and is being reported more than seven years after Plaintiffs filed their bankruptcy petition and the debt was discharged.

37. Under the 2020 Credit Reporting Resource Guide published by the Consumer Data Industry Association, which sets out industry standards for the furnishing of consumer

credit information, all reporting of an account must discontinue once the account is discharged in a Chapter 7 bankruptcy.

38. Throughout 2017, 2018, 2019, and 2020, BSI furnished this account information to Trans Union, and Trans Union continued to keep reporting it, despite Mrs. Macdonald's numerous disputes that were sent directly to BSI.

39. On March 25, 2020, Trans Union was still reporting the Kenmore Mortgage account under "Adverse Accounts" with the following information:

```
BSI FINANCIAL SERVICES #143301****
PO BOX 517314 S FRANKLIN ST
TITUSVILLE, PA 16354-0517
(800) 327-7861

Date Opened:         08/13/2002          Date Updated:         05/02/2018      Pay Status:    >Account 60 Days Past
Responsibility:      Individual Account  Payment Received:     $0                             Due Date<
Account Type:        Mortgage Account    Last Payment Made:    04/09/2018      Terms:         $0 per month, paid Monthly
Loan Type:           CONVENTIONAL                                                              for 360 months
                     REAL ESTATE                                                Date Closed:   05/02/2018
                     MTG                                                        >Maximum Delinquency of 60 days in 10/2017 for
                                                                                $1,237 and in 05/2018<

High Balance: High balance of $75,000 from 09/2017 to 05/2018
Remarks: TRANSFERRED TO ANOTHER LENDER; TRANSFERRED TO ANOTHER OFFICE
Estimated month and year that this item will be removed: 03/2024
```

40. In July of 2020, Mrs. MacDonald sent a dispute directly to Trans Union to notify it that the Kenmore Mortgage account was discharged in bankruptcy, provided the bankruptcy case number, and requested that it be deleted because it was false, misleading, and obsolete.

41. On information and belief, Trans Union notified BSI of Mrs. MacDonald's disputes.

42. After receiving said notice, BSI failed to conduct a reasonable investigation.

43. In response, BSI verified the information it furnished regarding the Kenmore Mortgage.

44. Trans Union failed to conduct a reasonable investigation of Mrs. MacDonald's dispute.

45. Trans Union sent Mrs. MacDonald the following results on August 21, 2020:

**Your Investigation Results**

INVESTIGATION RESULTS - VERIFIED AS ACCURATE AND UPDATED: The disputed item(s) was verified as accurate; however, other information has also changed.

BSI FINANCIAL SERVICES #143301**** ( PO BOX 517, 314 S FRANKLIN ST, TITUSVILLE, PA 16354-0517, (800) 327-7861 )
We investigated the information you disputed and the disputed information was **VERIFIED AS ACCURATE**; however, we updated: **Date Updated; Last Payment Made; Past Due; Terms; Date Closed; Payment Received.** Here is how this account appears on your credit report following our investigation.

| | | | |
|---|---|---|---|
| Date Opened: 08/13/2002 | Balance: $0 | Pay Status: | >Account 60 Days Past Due Date< |
| Responsibility: Individual Account | Date Updated: 05/01/2018 | Terms: | $0 per month, paid Monthly for 360 months |
| Account Type: Mortgage Account | Payment Received: 05/01/2018 ($0) | | |
| Loan Type: CONVENTIONAL REAL ESTATE MTG | Last Payment Made: 05/01/2018 | Date Closed: | 05/01/2018 |
| | High Balance: $75,000 | | >Maximum Delinquency of 60 days in 10/2017 and in 05/2018< |

Remarks: TRANSFERRED TO ANOTHER LENDER; TRANSFERRED TO ANOTHER OFFICE
Estimated month and year that this item will be removed: 03/2024

| | 04/2018 | 03/2018 | 02/2018 | 01/2018 | 12/2017 | 11/2017 | 10/2017 | 09/2017 | 08/2017 | 07/2017 | 06/2017 | 05/2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 30 | 30 | 30 | 30 | 30 |

| | 04/2017 | 03/2017 | 02/2017 | 01/2017 | 12/2016 | 11/2016 | 10/2016 |
|---|---|---|---|---|---|---|---|
| Rating | 30 | OK | OK | OK | X | X | X |

46. This information is false, misleading, and obsolete for the reasons outlined above.

47. BSI continued to furnish and Trans Union continued to report this information.

48. Mrs. MacDonald sent another dispute letter to Trans Union in January of 2021, indicating that the account had been discharged in bankruptcy, providing the bankruptcy case number, and demanded that as a result it be deleted from her report because it was inaccurate and obsolete.

49. On information and belief, Trans Union again transmitted Mrs. MacDonald's dispute to BSI.

50. Trans Union and BSI again failed to conduct a reasonable investigation, and each verified the information being reported about the Kenmore Mortgage.

51. Trans Union responded with results dated February 24, 2021, refusing to delete the account and reporting the Kenmore Mortgage with the same inaccurate information.

52. As of the date of the filing of this Complaint, BSI is still furnishing and Trans Union is still reporting this false, inaccurate, and obsolete information.

## II.      Plaintiffs' Damages as a Direct Result of Defendants' Illegal Conduct

53.     Plaintiffs experienced a horrible tragedy in 2003 which caused them to enter into a financial downward spiral.

54.     That spiral culminated in the Plaintiffs filing a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Indiana styled *In re: Tammy MacDonald*, N.D. Ind. Bankr. No. 05-68053-jpk.

55.     After that bankruptcy, Plaintiffs sought to benefit from the fresh financial start it was supposed to give them, and rebuild their credit.

56.     More recently, like many Americans, Plaintiffs incurred unexpected credit card debt throughout 2020 as a result of hardships caused by the Covid-19 crisis.

57.     Plaintiffs intended to take out a home equity mortgage on an unencumbered investment property they owned and were renting to a tenant located at 3824 Towle Avenue, Hammond, Indiana, 46327, in order to pay off their accumulating credit card debt.

58.     However, because Plaintiffs were still aware that Trans Union and BSI were still reporting false, misleading, and obsolete information about her, they continually postponed applying for that mortgage while waiting for their disputes to be processed.

59.     As Plaintiffs' debts continued to accrue, Plaintiffs could not wait forever. After trying to fix the reporting issues by sending disputes to Trans Union, and receiving the results in February of 2021 where Trans Union and BSI refused to remove the false derogatory information, Plaintiffs hoped that the derogatory Kenmore Mortgage account on their Trans Union reports would not totally prevent them from obtaining a home equity loan.

60.     During the second week of March, 2021, Plaintiffs could wait no longer, so they applied for a home equity loan with Centier Bank located in Merrilville, Indiana.

61. Plaintiffs were denied as a direct result of the adverse false and obsolete information being furnished and reported by BSI and Trans Union.

62. The adverse action notice Plaintiff received from Centier, dated March 22, 2021, states that the denial is due to "collection action or judgment" and "delinquent past or present credit obligations with others."

63. That letter goes on to explain that they obtained Plaintiffs' credit information from defendant Trans Union.

64. At the time Trans Union published its file to Centier in relation to Plaintiffs' loan application, the Kenmore Mortgage was the only adverse account in Mrs. MacDonald's Trans Union file.

65. Plaintiffs were now left in a lose-lose situation. Without the ability to draw upon the equity in their unencumbered investment property, they had two choices: they could default on their credit card debt, which would destroy Mrs. MacDonald's otherwise good creditworthiness; or sell the investment property they had hoped to benefit from through their golden years.

66. Rather than destroy their credit, Plaintiffs decided to and did sell their investment property in Hammond Indiana, and used the proceeds to pay off their credit card debt.

67. As a direct result of Defendants' conduct, Plaintiffs were forced to sell their investment property, and thus also lost the opportunity to continue renting it out at a profit and its increasing value for years to come.

68. Plaintiffs attempted to refinance the mortgage on their primary residence on or about August 18, 2021, and received an Adverse Action Notice from Mr. Cooper that reflected that Plaintiffs' creditworthiness and credit scores had been negatively impacted. On information

and belief this credit denial was caused by the false and obsolete information being furnished and reported by Defendants.

69. As a result of Defendants' varied and distinct violations of the FCRA, Plaintiffs have suffered a range of actual damages including, without limitation, loss of rental income; loss of economic opportunities and positions and advances in the future; the expenditure of time and money trying to correct Defendants' erroneous information; damage to reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including anger, disbelief, irritability with one another and fighting over family finances; marital strife; confusion; fatigue; and heightened stress and anxiety.

## CLAIMS FOR RELIEF

### COUNT I – *By Mrs. MacDonald*
### 15 U.S.C. § 1681e(b)
### *Against Trans Union LLC*

70. Mrs. MacDonald realleges and incorporate by reference the factual allegations above.

71. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

72. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

73. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of Plaintiffs' consumer report and the files it published and maintained.

74. As a result of Trans Union violations of the FCRA, Mrs. MacDonald has suffered a range of actual injuries and damages as outlined above.

75. Said injuries are distinguishable and attributable solely to Defendant Trans Union and occurred as a direct result of actions taken independently by Trans Union.

76. Trans Union willfully violated the FCRA in that its actions were in reckless disregard of the requirements of the statute. Thus, Trans Union is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

77. Trans Union is well aware that it has problems with accounts included in bankruptcy, but its inaccurate reporting has nonetheless continued. *See White v. Trans. Union, LLC*, 462 F. Supp. 2d 1079 (C.D. Cal. 2006).

78. Trans Union is also well aware that it has problems with its process for reinvestigating consumer accounts: it has been sued by the FTC, states attorneys general, and hundreds of consumers for failing to follow the obligations contained in 15 U.S.C. § 1681i.

79. In the alternative, Trans Union negligently violated the FCRA which entitles Plaintiff to a recovery under 15 U.S.C. § 1681o.

80. Pursuant to 15 U.S.C. § 1681o and § 1681n, Mrs. MacDonald is entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

### COUNT II – *By Mrs. MacDonald*
### 15 U.S.C. § 1681i
### *Against Trans Union LLC*

81. Mrs. MacDonald realleges and incorporate by reference the factual allegations above.

82. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

83. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

84. Trans Union failed to comply with the procedures in 15 U.S.C. § 1681i in regard to Plaintiffs' disputes.

85. As a result of Trans Union violations of the FCRA, Mrs. MacDonald has suffered a range of actual injuries and damages as outlined above.

86. Said injuries are distinguishable and attributable solely to Defendant Trans Union and occurred as a direct result of actions taken independently by Trans Union.

87. Trans Union willfully violated the FCRA in that its actions were in reckless disregard of the requirements of the statute. Thus, Trans Union is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

88. Trans Union is well aware that it has problems with accounts included in bankruptcy, but its inaccurate reporting has nonetheless continued. *See White v. Trans. Union, LLC*, 462 F. Supp. 2d 1079 (C.D. Cal. 2006).

89. Trans Union is also well aware that it has problems with its process for reinvestigating consumer accounts: it has been sued by the FTC, states attorneys general, and hundreds of consumers for failing to follow the obligations contained in 15 U.S.C. § 1681i.

90. In the alternative, Trans Union negligently violated the FCRA which entitles Plaintiff to a recovery under 15 U.S.C. § 1681o.

91. Pursuant to 15 U.S.C. § 1681o and § 1681n, Mrs. MacDonald is entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

### COUNT III – *By Mr. MacDonald*
### 15 U.S.C. § 1681e(b)
### *Against Trans Union LLC*

92. Mr. MacDonald realleges and incorporate by reference the factual allegations above.

93. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

94. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

95. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of Plaintiffs' consumer report and the files it published and maintained.

96. As a result of Trans Union violations of the FCRA, Mr. MacDonald has suffered a range of actual injuries and damages as outlined above.

97. Said injuries are distinguishable and attributable solely to Defendant Trans Union and occurred as a direct result of actions taken independently by Trans Union.

98. Trans Union willfully violated the FCRA in that its actions were in reckless disregard of the requirements of the statute. Thus, Trans Union is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

99. Trans Union is well aware that it has problems with accounts included in bankruptcy, but its inaccurate reporting has nonetheless continued. *See White v. Trans. Union, LLC*, 462 F. Supp. 2d 1079 (C.D. Cal. 2006).

100. Trans Union is also well aware that it has problems with its process for reinvestigating consumer accounts: it has been sued by the FTC, states attorneys general, and hundreds of consumers for failing to follow the obligations contained in 15 U.S.C. § 1681i.

101. In the alternative, Trans Union negligently violated the FCRA which entitles Plaintiff to a recovery under 15 U.S.C. § 1681o.

102. Pursuant to 15 U.S.C. § 1681o and § 1681n, Mr. MacDonald is entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

### COUNT IV – *By Mr. MacDonald*
### 15 U.S.C. § 1681i
### *Against Trans Union LLC*

103. Mr. MacDonald realleges and incorporate by reference the factual allegations above.

104. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

105. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

106. Trans Union failed to comply with the procedures in 15 U.S.C. § 1681i in regard to Plaintiffs' disputes and in regard to the reinsertion of previously deleted material.

107. As a result of Trans Union violations of the FCRA, Mr. MacDonald has suffered a range of actual injuries and damages as outlined above.

108. Said injuries are distinguishable and attributable solely to Defendant Trans Union and occurred as a direct result of actions taken independently by Trans Union.

109. Trans Union willfully violated the FCRA in that its actions were in reckless disregard of the requirements of the statute. Thus, Trans Union is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

110. Trans Union is well aware that it has problems with accounts included in bankruptcy, but its inaccurate reporting has nonetheless continued. *See White v. Trans. Union, LLC*, 462 F. Supp. 2d 1079 (C.D. Cal. 2006).

111. Trans Union is also well aware that it has problems with its process for reinvestigating consumer accounts: it has been sued by the FTC, states attorneys general, and hundreds of consumers for failing to follow the obligations contained in 15 U.S.C. § 1681i.

112. In the alternative, Trans Union negligently violated the FCRA which entitles Plaintiff to a recovery under 15 U.S.C. § 1681o.

113. Pursuant to 15 U.S.C. § 1681o and § 1681n, Mr. MacDonald is entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

### COUNT V – *By Mrs. MacDonald*
### 15 U.S.C. §§ 1681s–2(b)
### *Against Servis One, Inc. d.b.a. BSI Financial Services*

114. Mrs. MacDonald realleges and incorporates by reference the factual allegations above.

115. BSI is a "furnisher of information" as defined by 15 U.S.C. § 1681s-2.

116. Each time Mrs. MacDonald disputed BSI's reporting of the Kenmore Mortgage with Trans Union, and Trans Union sent notice of the dispute to BSI, BSI willfully, or in the alternative, negligently, violated its obligations under 15 U.S.C. § 1681s-2(b).

117. As a result of BSI's violations of the FCRA, Mrs. MacDonald has suffered a range of actual damages and injuries as outlined above.

118. Said injuries are distinguishable and attributable solely to Defendant BSI and occurred as a direct result of actions taken independently by BSI.

119. BSI willfully violated the FCRA in that its actions were in reckless disregard of the requirements of the statute. Thus, BSI is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

## COUNT VI – *By Mr. MacDonald*
## 15 U.S.C. §§ 1681s–2(b)
### *Against Statebridge Company, LLC*

120. Mr. MacDonald realleges and incorporates by reference the factual allegations above.

121. Statebridge is a "furnisher of information" as defined by 15 U.S.C. § 1681s-2.

122. Each time Mr. MacDonald disputed Statebridge's reporting of the Kenmore Mortgage with Trans Union, and Trans Union sent notice of the dispute to Statebridge, Statebridge willfully, or in the alternative, negligently, violated its obligations under 15 U.S.C. § 1681s-2(b).

123. As a result of Statebridge's violations of the FCRA, Mr. MacDonald has suffered a range of actual damages and injuries as outlined above.

124. Said injuries are distinguishable and attributable solely to Defendant BSI and occurred as a direct result of actions taken independently by BSI.

125. Statebridge willfully violated the FCRA in that its actions were in reckless disregard of the requirements of the statute. Thus, Statebridge is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

I. Determining that Defendants Trans Union, Statebridge, and BSI negligently and/or willfully violated the FCRA as alleged;

II. Awarding actual damages, statutory damages, and punitive damages to Plaintiffs as provided by the FCRA;

III. Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

IV. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Dated: November 12, 2021                    Respectfully submitted,

                                                                *s/Steven J. Uhrich*

Steven J. Uhrich (6310369)
UHRICH LAW, P.C.
1 N. State Street, Suite 1500
Chicago, IL 60602
p: 773-969-6337
f: 773-496-6968
steven@uhrichlawpc.com

Stephanie R. Tatar
TATAR LAW FIRM, APC
3333 Warrenville Road, Suite 200
Lisle, IL 60532
p:312-423-4994
stephanie@thetatarlawfirm.com

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiffs, the events described herein, any third party who took steps in relation to Plaintiffs or Plaintiffs' accounts and reporting, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If Defendants are aware of any third party that has possession, custody, or control of any such materials, Plaintiffs demand that Defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendants.

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that counsel for Plaintiffs claim a lien upon any recovery herein for any attorney's fees authorized by the above fee-shifting statutes or awarded by the Court. All rights relating to attorneys' fees have been assigned to counsel for Plaintiffs.