IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Jeffrey Macdonald, Tammy Macdonald, *Plaintiffs*, | CASE NO. 1:21-cv-6070 |
| v. | Hon. Charles P. Kocoras |
| Servis One, Inc. d.b.a. BSI Financial Services; Statebridge Company, LLC; Trans Union LLC, *Defendants*. | Magistrate Judge: Hon. Jeffrey T. Gilbert |

**FIRST AMENDED COMPLAINT**

Plaintiffs Jeffrey MacDonald (Mr. MacDonald) and Tammy MacDonald (Mrs. MacDonald)(collectively Plaintiffs) bring the following Complaint against Servis One, Inc. d.b.a. BSI Financial Services (BSI), Statebridge Company, LLC (Statebridge), and Trans Union LLC (Trans Union) for violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, arising out of the obsolete, false, and misleading reporting of Plaintiffs' discharged mortgage loan.

**PARTIES**

1. Plaintiffs are consumers as that term is defined in 15 U.S.C. § 1681a.

2. Plaintiffs are the owners of the real property located at 5950 North Kenmore Avenue, Apartment 101, Chicago, Illinois, 60660 (Kenmore Property).

3. Trans Union is a limited liability company organized under the laws of Delaware and has a principal place of business at 555 West Adams Street, Chicago, Illinois 60661.

4. Trans Union is a consumer reporting agency as that term is defined in 15 U.S.C. § 1681a that compiles and maintains files on consumers on a nationwide basis. Trans Union is regularly engaged in the practice of assembling and evaluating consumer credit information for

the purpose of furnishing to third parties reports of consumers' credit histories, commonly referred to as credit reports, and defined as consumer reports under 15 U.S.C. § 1681a.

5. BSI is a corporation organized under the laws of Delaware with its principal place of business at 1425 Greenway Drive, Suite 400, Irvine, Texas 75038. In the State of Illinois, BSI Financial Services is a fictitious name for Servis One, Inc.

6. BSI regularly conducts business in this District.

7. BSI is a mortgage servicing company that services residential mortgage loans and is a furnisher of information as defined by 15 U.S.C. § 1681s-2.

8. Statebridge is a corporation organized under the laws of Colorado with its principal place of business at 6061 South Willow Drive, Suite 300, Greenwood Village, CO 80111.

9. Statebridge regularly conducts business in this District.

10. Statebridge is a mortgage servicing company that services residential mortgage loans and is a furnisher of information as defined by 15 U.S.C. § 1681s-2.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

12. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District and the Kenmore Property is within this District.

## FACTS

**I.  Plaintiffs' Mortgage Loan on the Kenmore Property & Bankruptcy**

13. Plaintiffs executed a mortgage and promissory note in the amount of $75,000, on August 7, 2002, encumbering and secured by the Kenmore Property (Kenmore Mortgage).

14. On October 14, 2005, Plaintiffs filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Indiana styled *In re: Tammy MacDonald*, N.D. Ind. Bankr. No. 05-68053-jpk.

15. The Kenmore Mortgage was listed among the debts on Schedule F of Plaintiffs' bankruptcy petition and all subsequently filed Schedules.

16. On August 1, 2006, Plaintiffs were granted a discharge.

17. Plaintiffs did not reaffirm the Kenmore Mortgage debt.

18. That discharge eliminated Plaintiffs' personal liability for the Kenmore Mortgage, but it remained a lien against the Kenmore Property and Plaintiffs continued to make post-discharge payments. As of the date of this filing, Plaintiffs are current on payments under the Kenmore Mortgage.

19. After Plaintiffs' discharge, each servicer of the Kenmore Mortgage, including BSI and BSI's direct predecessor in interest, Statebridge, had actual knowledge of Plaintiffs' bankruptcy discharge.

20. After Plaintiffs' discharge, each servicer of the Kenmore Mortgage, including BSI and BSI's direct predecessor in interest, Statebridge, took actions indicating they were aware and believed that the Kenmore Mortgage had been discharged in bankruptcy.

**II.  Statebridge's Inaccurate Furnishing & Mr. MacDonald's Disputes**

21. Statebridge serviced the Kenmore Mortgage between July 2014 and August 2016.

22. Statebridge furnished and continues to furnish inaccurate information regarding Mr. MacDonald to Trans union regarding the Kenmore Mortgage.

23. For example, Mr. MacDonald's Trans Union reports listed the Kenmore Mortgage account under "Adverse Accounts" with the following information:

```
STATEBRIDGE COMPANY #178** ( 6061 SOUTH WILLOW DR, SUITE 300, GREENWOOD VILLAGE, CO 80111, (866) 466-3360 )
We investigated the information you disputed and this previously deleted item has now been verified and
ADDED back to your credit report. Here is how this information appears on your credit report following our
investigation.
Date Opened:        08/13/2002              Balance:              $0                 Pay Status:    Current; Paid or Paying as
Responsibility:     Joint Account           Date Updated:         10/25/2016                         Agreed
Account Type:       Mortgage Account        Payment Received:     10/07/2016 ($0)    Terms:         $0 per month, paid Monthly
Loan Type:          CONVENTIONAL REAL       Last Payment Made:    10/07/2016                        for 84 months
                    ESTATE MTG              High Balance:         $75,000            Date Closed:   10/25/2016

Remarks: TRANSFERRED TO ANOTHER OFFICE
         09/2016 08/2016 07/2016 06/2016 05/2016 04/2016 03/2016 02/2016 01/2016 12/2015 11/2015 10/2015
Rating     X       X       X       X       X       X       X       X       X       X       X       X
         09/2015 08/2015 07/2015 06/2015 05/2015 04/2015 03/2015 02/2015 01/2015 12/2014 11/2014 10/2014
Rating     X       X       X       X       X       X       X       X       X       X       X       X
         09/2014 08/2014 07/2014
Rating     X       X       X
```

24. This derogatory account information should not have been furnished by Statebridge or reported by Trans Union, and is false and misleading for the following reasons:

   a) The information is obsolete because the account was discharged in a bankruptcy in 2005, yet is being reported more than seven years after Mr. MacDonald filed his bankruptcy petition and the debt was discharged. 15 U.S.C. § 1681c(a)(5); FTC, 40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations 56 (2011).

   b) The information is misleading because it does not include a Bankruptcy Consumer Information Indicator to indicate that the account was included and discharged in a chapter 7 bankruptcy, as is required to report the account accurately under industry standards, CDIA guidance, and according to the

        FTC. And such an indicator could not be included, because 15 U.S.C. § 1681c(a)(1) does not allow the reporting of information regarding bankruptcy cases older than ten years. The only way to accurately report this account is to not report it at all.

    c) The "X" notations—indicating an "unknown payment history"—contradict the fact that Plaintiff had made payments for more than one of the months indicated, and contradicts the "Paid or Paying as Agreed" Pay status. This gives the misimpression that Mr. MacDonald was "past-due" on the account, implies that Mr. MacDonald was personally liable on this debt at the time of the reporting, and contradicts the reporting of a "$0" balance.

    d) The account does not reflect that the account was disputed.

25. Mr. MacDonald sent a dispute directly to Trans Union in early 2021 to notify it that the Kenmore Mortgage account was discharged in bankruptcy, provided the bankruptcy case number, and requested that the Statebridge account be deleted because it was inaccurate and obsolete.

26. On information and belief, Trans Union notified Statebridge of Plaintiffs' disputes.

27. On information and belief, Trans Union notified Statebridge of Mr. MacDonald's disputes.

28. After receiving said notice, Statebridge failed to conduct a reasonable investigation. Statebridge did not contact Plaintiff or anyone else to request additional information or verify that the information it was reporting was accurate. A cursory review of Statebridge's own records and publicly available bankruptcy records would have revealed that

the account was obsolete and that the information being furnished by Statebridge was misleading regarding Mr. MacDonald's liability for the debt and whether he was delinquent on payments.

29. Trans Union failed to conduct a reasonable investigation of Mr. MacDonald's dispute. Trans Union did not contact Plaintiff or anyone else to request additional information or verify that the information it was reporting was accurate. A cursory review of Trans Union's own records and publicly available bankruptcy records would have revealed that the account was obsolete and that the information being furnished by Statebridge was misleading regarding Mr. MacDonald's liability for the debt and whether he was delinquent on payments.

30. Despite the inaccuracy and obsolescence of the account, on June 22, 2021, Trans Union notified Mr. MacDonald that it was reinserting the adverse Statebridge information into his file:

> **Your Investigation Results**
>
> INVESTIGATION RESULTS - REINSERTED: This previously deleted item(s) has been verified; therefore, it has been added back to your credit report.

31. In response to Mr. MacDonald's dispute, Statebridge verified the information it furnished regarding the Kenmore Mortgage was complete and accurate under 1681i(a)(5)(B)(i).

### III. BSI's Inaccurate Reporting & Mrs. MacDonald's Disputes

32. The servicing of the Kenmore Mortgage was transferred from Statebridge to BSI in August 2016.

33. BSI serviced the Kenmore Mortgage between August 2016 and May 2018.

34. BSI furnished and continues to furnish derogatory, false, misleading, and obsolete information regarding Mrs. MacDonald to Trans Union regarding the Kenmore Mortgage. For

example, in March, 2020, Mrs. MacDonald's Trans Union report listed the Kenmore Mortgage account under "Adverse Accounts" with the following information:



35. This derogatory account information should not have been furnished by BSI or reported by Trans Union, and is false and misleading for the following reasons:

   a) The information is obsolete because the account was discharged in a bankruptcy in 2005, yet is being reported more than seven years after Mr. MacDonald filed his bankruptcy petition and the debt was discharged. 15 U.S.C. § 1681c(a)(5); FTC, 40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations 56 (2011). The account indicates it will be removed in March of 2024, confirming the obsolete reporting will continue.

b) The information is misleading because it does not include a Bankruptcy Consumer Information Indicator to indicate that the account was included and discharged in a chapter 7 bankruptcy, as is required to report the account accurately under industry standards, CDIA guidance, and according to the FTC. And such an indicator could not be included, because 15 U.S.C. § 1681c(a)(1) does not allow the reporting of information regarding bankruptcy cases older than ten years. The only way to accurately report this account is to not report it at all.

c) The information is false and misleading because the last payment on the account was not April 9, 2018, the account is not 60 days past due, the maximum delinquency was not $1,237, and the account was not closed in May 2018. This information gives the misimpression that Mrs. MacDonald was delinquent on the account, implies that Mrs. MacDonald was personally liable on this debt at the time of the reporting, and contradicts the reporting of a "$0" balance.

d) The payment history, listing a balance of over $50,000, 14 months of either 30 or 60 days past due, and listing varying non-zero amounts "past due" is inaccurate and misleading, because Mrs. MacDonald did not owe anything on the debt after her bankruptcy was discharged in 2005. This information gives the misimpression that Mrs. MacDonald owed and was delinquent on the account, implies that Mrs. MacDonald was personally liable on this debt at the time of the reporting, and contradicts the reporting of a "$0" balance.

e) The account does not reflect that the account is disputed.

36. Throughout 2017, 2018, 2019, and 2020, BSI furnished this account information to Trans Union, and Trans Union continued to keep reporting it, despite Mrs. Macdonald's numerous disputes that were sent directly to BSI.

37. In July of 2020, Mrs. MacDonald sent a dispute directly to Trans Union to notify it that the Kenmore Mortgage account was discharged in bankruptcy, provided the bankruptcy case number, and requested that it be deleted because it was false, misleading, and obsolete.

38. On information and belief, Trans Union notified BSI of Mrs. MacDonald's disputes.

39. After receiving said notice, BSI failed to conduct a reasonable investigation. BSI did not contact Plaintiff or anyone else to request additional information or verify that the information it was reporting was accurate. A cursory review of BSI's own records and publicly available bankruptcy records would have revealed that the account was obsolete and that the information being furnished by BSI was misleading regarding Mrs. MacDonald's liability for the debt and whether she was delinquent on payments.

40. BSI verified the information it furnished regarding the Kenmore Mortgage.

41. Trans Union failed to conduct a reasonable investigation of Mrs. MacDonald's dispute. Trans Union did not contact Plaintiff or anyone else to request additional information or verify that the information it was reporting was accurate. A cursory review of Trans Union's own records and publicly available bankruptcy records would have revealed that the account was obsolete and that the information being furnished by Statebridge was misleading regarding Mrs. MacDonald's liability for the debt and whether she was delinquent on payments.

42. Trans Union sent Mrs. MacDonald the following results on August 21, 2020:

> **Your Investigation Results**
>
> **INVESTIGATION RESULTS - VERIFIED AS ACCURATE AND UPDATED:** The disputed item(s) was verified as accurate; however, other information has also changed.
>
> **BSI FINANCIAL SERVICES** #143301**** ( PO BOX 517, 314 S FRANKLIN ST, TITUSVILLE, PA 16354-0517, (800) 327-7861 )
> We investigated the information you disputed and the disputed information was **VERIFIED AS ACCURATE**; however, we updated: **Date Updated; Last Payment Made; Past Due; Terms; Date Closed; Payment Received.** Here is how this account appears on your credit report following our investigation.
>
> | | | | |
> |---|---|---|---|
> | Date Opened: 08/13/2002 | Balance: $0 | Pay Status: | >Account 60 Days Past Due Date< |
> | Responsibility: Individual Account | Date Updated: 05/01/2018 | | |
> | Account Type: Mortgage Account | Payment Received: 05/01/2018 ($0) | Terms: | $0 per month, paid Monthly for 360 months |
> | Loan Type: CONVENTIONAL REAL ESTATE MTG | Last Payment Made: 05/01/2018 | | |
> | | High Balance: $75,000 | Date Closed: | 05/01/2018 |
> | | | | >Maximum Delinquency of 60 days in 10/2017 and in 05/2018< |
>
> Remarks: TRANSFERRED TO ANOTHER LENDER; TRANSFERRED TO ANOTHER OFFICE
> Estimated month and year that this item will be removed: 03/2024
>
> | | 04/2018 | 03/2018 | 02/2018 | 01/2018 | 12/2017 | 11/2017 | 10/2017 | 09/2017 | 08/2017 | 07/2017 | 06/2017 | 05/2017 |
> |---|---|---|---|---|---|---|---|---|---|---|---|---|
> | Rating | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 30 | 30 | 30 | 30 | 30 |
>
> | | 04/2017 | 03/2017 | 02/2017 | 01/2017 | 12/2016 | 11/2016 | 10/2016 |
> |---|---|---|---|---|---|---|---|
> | Rating | 30 | OK | OK | OK | X | X | X |

43. This information is false, misleading, and obsolete for the reasons outlined above.

44. BSI continued to furnish and Trans Union continued to report this information.

45. Mrs. MacDonald sent another dispute letter to Trans Union in January of 2021, indicating that the account had been discharged in bankruptcy, providing the bankruptcy case number, and demanded that as a result it be deleted from her report because it was inaccurate and obsolete.

46. On information and belief, Trans Union again transmitted Mrs. MacDonald's dispute to BSI.

47. Trans Union and BSI again failed to conduct a reasonable investigation, as outlined above, and each verified the information being reported about the Kenmore Mortgage.

48. Trans Union responded with results dated February 24, 2021, refusing to delete the account and reporting the Kenmore Mortgage with the same inaccurate information.

49. As of the date of the filing of this Complaint, BSI is still furnishing and Trans Union is still reporting this false, inaccurate, and obsolete information.

### IV. Plaintiffs' Damages as a Result of Defendants' Illegal Conduct

50. Plaintiffs experienced a horrible tragedy in 2003 which caused them to enter into a financial downward spiral.

51. That spiral culminated in the Plaintiffs filing a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Indiana styled *In re: Tammy MacDonald*, N.D. Ind. Bankr. No. 05-68053-jpk.

52. After that bankruptcy, Plaintiffs sought to benefit from the fresh financial start it was supposed to give them, and began to rebuild their credit.

53. More recently, like many Americans, Plaintiffs incurred unexpected credit card debt throughout 2020 as a result of hardships caused by the Covid-19 crisis. However, Plaintiffs were able to continue making their minimum required payments.

54. Plaintiffs intended to take out a home equity mortgage on an unencumbered investment property they owned and were renting to a tenant located at 3824 Towle Avenue, Hammond, Indiana, 46327, in order to pay off their accumulating credit card debt.

55. However, because Plaintiffs were still aware that Trans Union and BSI were still reporting false, misleading, and obsolete information about them, they continually postponed applying for that mortgage while waiting for their disputes to be processed.

56. As Plaintiffs' debts continued to accrue, they could not wait forever. The inaccurate reporting left them between a rock and a hard place: they could not continue to make timely payments on ever-increasing credit card bills every month. They did not want to default on their credit cards, but if they could not obtain a loan on the 3824 Towle property, they would either have to default on their bills (destroying their credit) or sell the 3824 Towle property.

57. After trying to fix the reporting issues by sending disputes to Trans Union, and receiving the results in February of 2021 where Trans Union and BSI refused to remove the false derogatory information, Plaintiffs hoped that the derogatory Kenmore Mortgage account on their Trans Union reports would not totally prevent them from obtaining a home equity loan.

58. During the second week of March, 2021, Plaintiffs could wait no longer, so they applied for a home equity loan with Centier Bank located in Merrilville, Indiana.

59. Plaintiffs were denied by Centier Bank as a result of the derogatory, false, misleading, and obsolete information being furnished and reported by BSI and Trans Union.

60. The adverse action notice Plaintiff received from Centier, dated March 22, 2021, states that the denial is due to "collection action or judgment" and "delinquent past or present credit obligations with others."

61. That letter goes on to explain that Centier obtained Plaintiffs' credit information from defendant Trans Union.

62. Plaintiffs were now left in a lose-lose situation. Without the ability to draw upon the equity in their unencumbered investment property, they had two choices: they could default on their credit card debt, which would destroy Plaintiffs' otherwise good creditworthiness; or sell the investment property they had hoped to benefit from through their golden years.

63. Rather than voluntarily default on their credit cards and destroy their credit, Plaintiffs decided to and did sell their investment property in Hammond Indiana and used the proceeds to pay off their credit card debt.

64. As a result of Defendants' unlawful conduct, Plaintiffs were forced to sell their investment property, and thus also lost the opportunity to continue renting it out at a profit and its increasing value for years to come.

65. Plaintiffs attempted to refinance the mortgage on their primary residence on or about August 18, 2021, and received an Adverse Action Notice from Mr. Cooper that reflected that Plaintiffs' creditworthiness and credit scores had been negatively impacted. On information and belief this credit denial was caused by the false and obsolete information being furnished and reported by Defendants, and Defendants' failure to correct the false reporting after it was disputed.

66. As a result of Defendants' varied and distinct violations of the FCRA, Plaintiffs have suffered a range of actual damages including, without limitation, loss of credit opportunity, loss of rental income; loss of economic opportunities and positions and advances in the future; the expenditure of time and money trying to correct Defendants' erroneous information; damage to reputation including credit reputation and creditworthiness; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including anger, disbelief, irritability with one another and fighting over family finances; marital strife; confusion; fatigue; and heightened stress and anxiety.

## CLAIMS FOR RELIEF

### COUNT I – *By Mrs. MacDonald*
### 15 U.S.C. § 1681e(b)
### *Against Trans Union LLC*

67. Mrs. MacDonald realleges and incorporate by reference the factual allegations above.

68. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

69. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

70. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of Plaintiffs' consumer report and the files it published and maintained.

71. As a result of Trans Union violations of the FCRA, Mrs. MacDonald has suffered a range of actual injuries and damages as outlined above.

72. Said injuries are distinguishable and attributable solely to Defendant Trans Union and occurred as a result of actions taken independently by Trans Union.

73. Trans Union willfully violated the FCRA in that its actions were in reckless disregard of the requirements of the statute. Thus, Trans Union is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

74. Trans Union is well aware that it has problems with accounts included in bankruptcy, but its inaccurate reporting has nonetheless continued. *See White v. Trans. Union, LLC*, 462 F. Supp. 2d 1079 (C.D. Cal. 2006).

75. Trans Union is also well aware that it has problems with its process for reinvestigating consumer accounts: it has been sued by the FTC, states attorneys general, and hundreds of consumers for failing to follow the obligations contained in 15 U.S.C. § 1681i.

76. In the alternative, Trans Union negligently violated the FCRA which entitles Plaintiff to a recovery under 15 U.S.C. § 1681o.

77. Pursuant to 15 U.S.C. § 1681o and § 1681n, Mrs. MacDonald is entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT II – *By Mrs. MacDonald*
## 15 U.S.C. § 1681i
## *Against Trans Union LLC*

78. Mrs. MacDonald realleges and incorporate by reference the factual allegations above.

79. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

80. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

81. Trans Union failed to comply with the procedures in 15 U.S.C. § 1681i in regard to Plaintiffs' disputes.

82. As a result of Trans Union violations of the FCRA, Mrs. MacDonald has suffered a range of actual injuries and damages as outlined above.

83. Said injuries are distinguishable and attributable solely to Defendant Trans Union and occurred as a result of actions taken independently by Trans Union.

84. Trans Union willfully violated the FCRA in that its actions were in reckless disregard of the requirements of the statute. Thus, Trans Union is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

85. Trans Union is well aware that it has problems with accounts included in bankruptcy, but its inaccurate reporting has nonetheless continued. *See White v. Trans. Union, LLC*, 462 F. Supp. 2d 1079 (C.D. Cal. 2006).

86. Trans Union is also well aware that it has problems with its process for reinvestigating consumer accounts: it has been sued by the FTC, states attorneys general, and hundreds of consumers for failing to follow the obligations contained in 15 U.S.C. § 1681i.

87. In the alternative, Trans Union negligently violated the FCRA which entitles Plaintiff to a recovery under 15 U.S.C. § 1681o.

88. Pursuant to 15 U.S.C. § 1681o and § 1681n, Mrs. MacDonald is entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

### COUNT III – *By Mr. MacDonald*
### 15 U.S.C. § 1681e(b)
### *Against Trans Union LLC*

89. Mr. MacDonald realleges and incorporate by reference the factual allegations above.

90. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

91. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

92. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of Plaintiffs' consumer report and the files it published and maintained.

93. As a result of Trans Union violations of the FCRA, Mr. MacDonald has suffered a range of actual injuries and damages as outlined above.

94. Said injuries are distinguishable and attributable solely to Defendant Trans Union and occurred as a result of actions taken independently by Trans Union.

95. Trans Union willfully violated the FCRA in that its actions were in reckless disregard of the requirements of the statute. Thus, Trans Union is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

96. Trans Union is well aware that it has problems with accounts included in bankruptcy, but its inaccurate reporting has nonetheless continued. *See White v. Trans. Union, LLC*, 462 F. Supp. 2d 1079 (C.D. Cal. 2006).

97. Trans Union is also well aware that it has problems with its process for reinvestigating consumer accounts: it has been sued by the FTC, states attorneys general, and hundreds of consumers for failing to follow the obligations contained in 15 U.S.C. § 1681i.

98. In the alternative, Trans Union negligently violated the FCRA which entitles Plaintiff to a recovery under 15 U.S.C. § 1681o.

99. Pursuant to 15 U.S.C. § 1681o and § 1681n, Mr. MacDonald is entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

### COUNT IV – *By Mr. MacDonald*
### 15 U.S.C. § 1681i
### *Against Trans Union LLC*

100. Mr. MacDonald realleges and incorporate by reference the factual allegations above.

101. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

102. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

103. Trans Union failed to comply with the procedures in 15 U.S.C. § 1681i in regard to Plaintiffs' disputes and in regard to the reinsertion of previously deleted material.

104. As a result of Trans Union violations of the FCRA, Mr. MacDonald has suffered a range of actual injuries and damages as outlined above.

105. Said injuries are distinguishable and attributable solely to Defendant Trans Union and occurred as a result of actions taken independently by Trans Union.

106. Trans Union willfully violated the FCRA in that its actions were in reckless disregard of the requirements of the statute. Thus, Trans Union is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

107. Trans Union is well aware that it has problems with accounts included in bankruptcy, but its inaccurate reporting has nonetheless continued. *See White v. Trans. Union, LLC*, 462 F. Supp. 2d 1079 (C.D. Cal. 2006).

108. Trans Union is also well aware that it has problems with its process for reinvestigating consumer accounts: it has been sued by the FTC, states attorneys general, and hundreds of consumers for failing to follow the obligations contained in 15 U.S.C. § 1681i.

109. In the alternative, Trans Union negligently violated the FCRA which entitles Plaintiff to a recovery under 15 U.S.C. § 1681o.

110. Pursuant to 15 U.S.C. § 1681o and § 1681n, Mr. MacDonald is entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

### COUNT V – *By Mrs. MacDonald*
### 15 U.S.C. §§ 1681s–2(b)
### *Against Servis One, Inc. d.b.a. BSI Financial Services*

111. Mrs. MacDonald realleges and incorporates by reference the factual allegations above.

112. BSI is a "furnisher of information" as defined by 15 U.S.C. § 1681s-2.

113. Each time Mrs. MacDonald disputed BSI's reporting of the Kenmore Mortgage with Trans Union, and Trans Union sent notice of the dispute to BSI, BSI willfully, or in the alternative, negligently, violated its obligations under 15 U.S.C. § 1681s-2(b).

114. As a result of BSI's violations of the FCRA, Mrs. MacDonald has suffered a range of actual damages and injuries as outlined above.

115. Said injuries are distinguishable and attributable solely to Defendant BSI and occurred as a result of actions taken independently by BSI.

116. BSI willfully violated the FCRA in that its actions were in reckless disregard of the requirements of the statute. Thus, BSI is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

### COUNT VI – *By Mr. MacDonald*
### 15 U.S.C. §§ 1681s–2(b)
### *Against Statebridge Company, LLC*

117. Mr. MacDonald realleges and incorporates by reference the factual allegations above.

118. Statebridge is a "furnisher of information" as defined by 15 U.S.C. § 1681s-2.

119. Each time Mr. MacDonald disputed Statebridge's reporting of the Kenmore Mortgage with Trans Union, and Trans Union sent notice of the dispute to Statebridge, Statebridge willfully, or in the alternative, negligently, violated its obligations under 15 U.S.C. § 1681s-2(b).

120. As a result of Statebridge's violations of the FCRA, Mr. MacDonald has suffered a range of actual damages and injuries as outlined above.

121. Said injuries are distinguishable and attributable solely to Defendant BSI and occurred as a result of actions taken independently by BSI.

122. Statebridge willfully violated the FCRA in that its actions were in reckless disregard of the requirements of the statute. Thus, Statebridge is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

I. Determining that Defendants Trans Union, Statebridge, and BSI negligently and/or willfully violated the FCRA as alleged;

II. Awarding actual damages, statutory damages, and punitive damages to Plaintiffs as provided by the FCRA;

III. Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

IV. Granting further relief, in law or equity, as this Court may deem appropriate and just.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury.

Dated: February 8, 2022

Respectfully submitted,

*s/Steven J. Uhrich*

Steven J. Uhrich
UHRICH LAW, P.C.
1 N. State Street, Suite 1500
Chicago, IL 60602
p: 773-969-6337
f: 773-496-6968
steven@uhrichlawpc.com

Stephanie R. Tatar
TATAR LAW FIRM, APC
3333 Warrenville Road, Suite 200
Lisle, IL 60532
p:312-423-4994
stephanie@thetatarlawfirm.com